Fitch *et al.* v. First National Bank of Rising Sun *et al.*

---

No. 11,672.

FITCH ET AL. *v.* FIRST NATIONAL BANK OF RISING SUN ET AL.

FRAUDULENT CONVEYANCE. - *Evidence.*—*Transfer to Bank.*—*Husband and Wife.*—In an action to set aside certain conveyances as fraudulent, made by an insolvent debtor to a bank in payment of credits due. the bank, as was claimed, evidence that such debtor's wife then held $37,700 of the stock of such bank in trust for him, has a tendency to show that such transfer was fraudulent as against other creditors.

SAME.—The fact that a large amount of property, consisting of town lots, saw-mill, saw-logs, lumber and other personal property, was conveyed by an insolvent debtor to such bank in payment of credits claimed to be due, without inventory, measurement or count, furnishes some evidence that such transfer was fraudulent as against other creditors.

SAME.—Where the cashier of such bank is cognizant that the transfer of such property will inure to the benefit of one of such debtors by enhancing the value of the stock held by his wife in trust for him, and that such excess is thus placed beyond the reach of other creditors of such debtors, these facts, in connection with the fact that such cashier knows that such debtors are insolvent, furnish some evidence that said bank participated in the alleged fraudulent intent of such debtors.

SAME.—*Estoppel.*—The fact that one of the creditors who instituted the action had obtained a judgment, and had levied upon one of the pieces of real estate that had been transferred, did not preclude him from maintaining the action.

SAME.— *Weight of Evidence.*—Where the evidence in such case tends to support the finding, the Supreme Court will not disturb it.

From the Ripley Circuit Court.

*J. K. Thompson, J. D. Haynes, B. Harrison, W. H. H. Miller,* and *J. B. Elam,* for appellants.

*A. C. Downey, A. C. Harris, C. E. Walker, J. D. Miller, F. E. Gavin, W. A. Moore, J. O. Marshall, H. D. McMullen,* and *D. T. Downey,* for appellees.

BEST, C.—The First National Bank of Rising Sun, the First National Bank of Indianapolis, several other banks and persons, all judgment creditors of DeWitt C. Fitch and Henry Fitch, brought this action against them, Leah Fitch and the City National Bank of Lawrenceburgh, to set aside as fraudulent certain conveyances of real property and certain transfers of personal property made by said debtors to said bank, and a certain transfer of the stock of said bank made by DeWitt C. Fitch to Leah Fitch, and to subject the same to the payment of their respective judgments.

Issues were formed, a trial had, a finding made, and judgment rendered for the appellees. A motion for a new trial, on the ground that the finding was not sustained by the evidence, and was contrary to the law, was overruled, and this ruling is assigned as error. Since this appeal was perfected Leah Fitch has dismissed the appeal as to her, and no question remains as to the order cancelling the transfer of stock to her.

The appellants insist that the property transferred to the bank was transferred in payment of *bona fide* debts due the bank from DeWitt C. Fitch and Henry Fitch, and that there is no evidence in the record of any purpose, upon the part of either of them, or upon the part of the bank, to hinder, delay or defraud the appellees, or any of the other creditors of DeWitt C. Fitch and Henry Fitch. This the appellees dispute, and insist that the evidence fully supports the finding. The established rule of this court, often announced and well understood, is, that if there is any evidence legally tending to support the finding, this court will not disturb the judgment upon a question involving the mere weight of the evidence. Being governed by this rule, we can only examine the evi-

dence for the purpose of determining whether or not the material and controverted averments of the complaint are wholly unsupported by it. There are, in this case, the averments that the conveyances and transfers were fraudulently made and received. The evidence developed many facts, the more important of which are these: On and prior to the 2d of February, 1883, the First National Bank of Lawrenceburgh was in existence. Its capital stock was $100,000, the most of which was held by DeWitt C. Fitch, who was its president. Henry Fitch was, and for years had been, its cashier, and held $6,000 of stock. Its charter then expired, and the City National Bank of Lawrenceburgh was organized as its successor. The assets of the old bank were transferred to the new, and the stock of the old was surrendered and a like amount of the new was issued to each of the stockholders. Of this DeWitt C. Fitch received $78,700, Henry Fitch $6,000, Walter Fitch $5,000, and the residue was divided between a half dozen other persons. A board of directors was elected, and DeWitt C. Fitch was selected as president, Henry Fitch, vice-president, and Walter Fitch, cashier. At this time, and until the suspension of the bank in August thereafter, Henry Fitch was extensively engaged in manufacturing and dealing in lumber, and gave the business of the bank but little attention; neither did his father; DeWitt C. Fitch, who was looking after his farming interests. The management of the bank devolved almost exclusively upon Walter, the cashier, who was also a son of DeWitt C. Fitch. During the whole of this time DeWitt C. and Henry were largely involved, and if they owed the bank the amounts claimed, as they probably did, each was hopelessly insolvent. On the 4th of May, DeWitt C. Fitch transferred to Mrs. Sunman, the mother-in-law of Walter, $10,000 of his stock; on May 9th he transferred to Leah Fitch, his wife, $26,000 of his stock; on July 10th he transferred to his wife $37,700 more of his stock, and the balance he transferred to George F. Fitch, a brother. He also owned a large amount of real

estate in this State, and 900 acres of land in Wisconsin. The last named tract he and his wife conveyed to Walter, and on the 2d day of August, he, his wife not joining him in the deeds, conveyed all the rest of his real estate to the bank. This consisted of a great many different parcels, all of which were situated in Dearborn county except one. The parcels in Dearborn county were embraced in a single deed, the consideration of which was named as $58,506.45. The consideration of the other parcel was $200, and the aggregate the exact amount of the debt due the bank. This left DeWitt C. Fitch without any means with which to pay creditors. Henry owned a number of lots in the city of Lawrenceburgh, upon some of which was situated a valuable saw-mill. He also owned a large number of saw-logs, a great quantity of lumber, a number of cars and other personal property. All this he conveyed and transferred to the bank on the same day that his father made his deeds, without making an inventory of the personal property, or, indeed, without knowing how much there was' of it. The aggregate consideration named in the deed and bills of sales was $54,310, the amount of his debt to the bank. At this time Henry was sick, and was unable to make a delivery of this property, and none was made until the 9th of August. In the meantime, his employees, twenty in number, run the mill and carried on his business as usual. After the transfer of this property Henry was without means with which to pay debts. The claims of the bank against himself and his father were then surrendered.' At the same time Leah Fitch, without consideration, retransferred $10,000 of her stock to her husband, who, through Walter, negotiated it in Cincinnati, and with the proceeds paid some other debts. On the day after the delivery of Henry's property to the bank it suspended and went into voluntary liquidation. It then owed its depositors $100,000, one-half of which it has since paid. On the 11th and 13th of September thereafter, the appellees recovered judgments in the Dearborn Circuit Court upon various

claims, which antedate the 2d of August, against DeWitt C. and Henry Fitch, in sums aggregating more than $40,000. Executions were at once issued upon these judgments, one of which was levied upon a part of the real estate in controversy, and the others remain in the sheriff's hands. All the deeds and bills of sale were absolute in form.

In addition to these facts, the evidence tended to show that Walter was cognizant of, and was instrumental in procuring, the transfer of the $37,700 of stock from his father to his mother; that he prepared a statement purporting to show that his father owed his mother $4,100 for dividends upon stock to which she was equitably entitled, to an annual rental of $1,175 for the eight or nine preceding years, and some other items that aggregated $28,000 or $29,000, for which the transfer was made; that he knew of his father's other debts and of his brother's debts, and that he was familiar with all the transfers of stock and of property. It further tended to show that the value of Henry's property largely exceeded his debt to the bank, and that he understood that the excess was to be applied in payment of his other debts, and that, notwithstanding the transfer, he expected some arrangement would be made whereby he would be enabled to continue his business. This is the substance of the evidence tending to sustain the charge.

On the other hand, the evidence satisfactorily shows that the father of Leah Fitch bequeathed to her $21,000 of stock in the First National Bank of Lawrenceburgh, and upon the organization of the City National Bank, this stock was embraced in the $78,700 of stock issued to DeWitt C. Fitch, and his transfer of $26,000 of such stock was in payment of the stock thus received by him and of dividends which he had received thereon. The validity of this transfer is not now questioned. The evidence also tended to show that the conveyance of the Wisconsin land was in consideration of the assumption of other debts by Walter, amounting to nearly the value of the land, and that the transfer of stock to George

F. Fitch was in part payment of a debt justly due him. It further tended to show that DeWitt C. Fitch and Henry Fitch were each justly indebted to the bank as claimed, and that the conveyances and transfers were made and received simply and solely for the purpose of paying such debts.

On the whole evidence, the question of intent was one of fact, and we do not think we can say that there was no evidence in support of the charge. At the time this property was transferred to the bank, Leah Fitch held the bulk of its stock, and it is obvious that its transfer inured to her benefit. It would not only relieve her of any individual liability to the creditors of the bank, but it would largely enhance the value of her stock, and thus enable her to enjoy the bulk of the proceeds of the property. If she had been the *bona fide* owner of the stock, and the transfer of the property had been made solely for the purpose of paying debts, the fact that she held the stock would in no manner impair the validity of the transfer; but she was not the *bona fide* owner of $37,700 of the stock. This was held by her fraudulently. At least the evidence tends to prove it, and the court has so adjudged it. This fact is not now controverted, and must be deemed established. The retransfer of $10,000 of this stock to her husband indicates that she held it in trust for him, and, if so, the conveyance of all his property to the bank inured, in a manner, to his own benefit. If this stock had remained in his name, perhaps this fact would have been immaterial, as his creditors could have seized the excess in its new form, but it was not so left; it was placed beyond their reach, and so was the property. These things furnish some evidence of the intent charged on the part of DeWitt C. Fitch.

Henry Fitch had no stock, but the fact that he conveyed and transferred all his property, consisting, as it partly did, of a large number of saw-logs, of a vast quantity of lumber and other personal property, without an inventory, without measurement or count, and without, in fact, knowing how much there was of it, coupled with the further fact that there was

some testimony tending to show that the property exceeded in value largely the amount of his debt to the bank, furnishes some evidence in support of the charge against him.

Walter assisted in obtaining the transfer of the $37,700 of stock from his father to his mother, and he must have known that while she held the legal title his father was the beneficial owner. He must also have known that the transfer of this property would largely enhance the value of the stock held by the mother for the father, and that so much of the property as produced the enhancement was thus placed beyond the reach of creditors. He must also have known that the effect of Henry's conveyance was likewise to place the excess, if any, of his property beyond the reach of his creditors. These things, in connection with his knowledge of his father's and brother's insolvency, furnish some evidence of the bank's participation in the alleged fraudulent intent.

We are, therefore, of opinion that we can not disturb the judgment upon these questions of fact.

It is also suggested that the levy of the execution in favor of the City National Bank of Greensburgh was *prima facie* a satisfaction of the judgment, and that such fact precludes said bank from maintaining the action. We think otherwise. The bank did not seek the recovery of another judgment, but simply an order setting aside the alleged fraudulent conveyances, so as to sell the property upon its execution. This was in aid of its writ, and the previous levy in no manner impaired its right to such order; besides, if its judgment had in fact been paid, this fact would not have prevented the other creditors from obtaining the proper order. Though all united, the action was not joint in the sense of requiring a recovery by all or by none.

For these reasons we think the judgment should be affirmed.

PER CURIAM.—It is therefore ordered that the above judgment be affirmed, at the appellants' costs.

Filed Jan. 8, 1885.